Mr. Brown, the final case on the docket this morning is 2-24-0490, people of the state of Illinois, plaintiff-appellant, Mr. Dillon and Ms. Sundell, defendants' attorneys. Arguing on behalf of the attorneys, Ms. Stephanie Holt-Lee. Arguing on behalf of the attorneys, Ms. Clark Hughes. All right, we have a motion for substitution of counsel. Stephanie Holt-Lee arguing on behalf of appellant. That is granted. There is a motion to take judicial notice of proceedings in a separate matter that will be taken with the case and may be addressed in your argument. So, counsel for the appellant, you may begin when ready. Please adjust the microphone to make sure we can hear you and see you. Okay. Good morning, your honors, and may it please the court.  Stephanie Lee here on behalf of the state. We are asking this court to reverse the trial court's order dismissing this case. I'd like to start actually by focusing on the fact that this amendment was not a new and additional charge. And based on that, that ends the analysis right there. Wait a minute. How is this not a new or additional charge? There's several ways that you can see that. One was heroin and the other one was what?  Oh, fentanyl. Correct. Are those the exact same charge? They are, actually. They carry the same penalty, but does that mean they're the same charge? They carry the same penalty. They're under the exact same statutory section. If you look at the stock case, S-T-A-A-K-E, you'll see that what you look for is was it the same penalty? Was it the same mental state? Was it the same evidence, which it clearly was the same evidence here? It was the same white pouch of a controlled substance that was found in the defendant's vehicle when he was actually passed out at the wheel. The defendant knew it was a controlled substance because he said it was heroin. He said it was heroin. He said it was heroin, and then it also did field test positively for heroin as well. So then why was it amended or changed to charge fentanyl? Well, it was amended because the lab result did, in fact, show fentanyl, which the people are aware of that. We are aware that we were imputed that knowledge from the date of the lab. Obviously, best practices, we would have come in and amended. Honestly, it could have been amended even as late as the trial to conform to the evidence. But if you see the pattern of what happened here leading up to trial, it wasn't even set for trial until July of 2023. And then a bench trial was set for October 18th. And when did you amend your charge? The amended charge was on October 4th, which was two weeks before the trial was set. And if you look at, I want to, sorry, it was Truett, which talks about, you know, you want to go ahead and re-verify, which is going to the grand jury. So I think in an abundance of caution, it made sense that they had the grand jury do that amendment. However, it really, based on the evidence, it wasn't necessary. If you look at the Castro case, for example, it talks about the defendant just needs to know that he was possessing a controlled substance. And that is the charge itself. So oftentimes, these days especially, we have cases where there's a combined substance. Maybe there's fentanyl and heroin in there. Either one of those would be, or we could allege both. We could say it had fentanyl and heroin in it. And based on the cases, if all that was proved up was the fentanyl, it would still be perfectly acceptable. That was based on the case that was the battery charges. Counsel, the test for fentanyl came in August 5th of 21. The indictment came in three weeks later for heroin.  And it wasn't amended for another two years and four months, I believe. Yes, you're correct. And as to that, first of all, I would like to correct a fact on that. It was addressed to the arresting officer, and we are aware of that. And it was sent to the Sheriff's Department, which was the arresting agency. What was that? I'm sorry, the lab report. It's addressed. We don't have an envelope. We have the lab report, and it names the sheriff and the arresting officer. What we do know is when the arresting officer was before the grand jury, obviously he had not seen it. So, yes, we had imputed knowledge. We did not have actual knowledge. There was no mention of any lab report at all. What led to the probable cause was the field test for heroin and the defendant's own admissions that it was heroin. That led to the grand jury probable cause, which is sufficient. Nobody is challenging, it hasn't been challenged, and it can't be challenged, that there was anything untoward about that original grand jury proceeding that found the probable cause. So you're submitting the Williams rule doesn't apply here? The Williams rule about new and additional? Yeah. No. What applies here is that, I mean, you would look at whether the defendant had actual notice, and what he had notice of is that he possessed that substance that was found in his car that apparently he had actually snorted. He said he took two IDs, corners, and snorted it. So that he had notice that he had a controlled substance. If you look at the statutory section C, which is what he is charged under, it's possession of a controlled substance of any amount of any, of an amount, excuse me, of a controlled substance other than methamphetamine, which this wasn't, then set forth in the ones that specifically spell it out, which is why with fentanyl and heroin, they are the exact same statutory section. It also was the same defense. He wasn't going to come, I mean, if he couldn't come in and say, as a defense to possession of a controlled substance, I thought it was heroin, and it turned out to be fentanyl. If in the event, your honors, do you find that it is, in fact, new and additional, then we would get to the speedy trial analysis and the waiver and all of that. We'll get to that in a minute, but tell me, how do you distinguish the Supreme Court people versus Isabel? Didn't, isn't that case basically saying you want to avoid trial by ambush? I would compare this to, more to Dreyer from this court. It's not a trial by ambush because the defendant was exactly aware of everything he was charged with. He knew the evidence. He knew the mental state. He knew what it was, what he was charged with possessing. He knew all of those things. The other point here is defendant, when this motion to dismiss was filed, which was, you know, two months after the amended indictment, they filed the original motion to dismiss. At that point, counsel couldn't even find defendant. And then it was continued. It was continued until he eventually appeared. He did appear. At that time, that was when trial was set, although he never ended up appearing on the original trial date either. Original is the speedy trial now? Well, this goes to the speedy trial, yes. It also goes to the notice of the defendant. I don't believe that the defendant would be saying, if I knew it was fentanyl, I went to flit. That doesn't make any sense. The defendant was aware he possessed a controlled substance, and that is what is illegal. What if they argue, you know, just for argument's sake, what if the defense attorney is sitting there, and they're like, hey, this is going to be our defense. It's not heroin. It's fentanyl. That's going to be our defense. And then all of a sudden, two weeks before trial, you file a new charging instrument or try to amend something that really was a substantive change. Isn't that prejudicial to them? The reason I disagree with that is because it is not a defense to possession of a controlled substance under this section that he possessed fentanyl and not heroin. But also, they did have two weeks. At the time when the demand for the speedy trial was even made, again, back to the speedy trial, but it does blend in the sense of what their plan and what their strategy was. And the fact of the matter is it was still looking like maybe it was going to be a plea, even as late as June 1, 2023. Once the trial was set, again, the defendant didn't show up for the trial. He was either aware of the change or he wasn't, but he did not show up to defend this charge. The record reflects the defense counsel stated she could not get a hold of him, right? Absolutely. And then it was filed. So the motion to continue was actually filed closer in. The amended charge was October 4th. The motion to dismiss was filed, I believe, October 12th. I'm sorry, the motion to continue trial was filed October 12th. And in that motion to continue trial, she couldn't reach her client. The motion to dismiss wasn't filed until December 13, 2023, which was two months later. And then it actually had to be stricken because the defendant failed to appear yet again. Let me ask you this, though. The defendant in his briefs says, well, it doesn't matter because the speedy trial had already run, the 160 days had already run before the defendant absented himself from the court. Correct. And the reason that Patterson would apply there, again, from this court, because what the speedy trial says is you actually waive the speedy trial if you don't appear. The theory that somehow they only waived it to this original charge, which they acknowledge, actually doesn't make sense. If you have count one, which was the original indictment, and then you have the amended indictment that came in that said fentanyl also labeled count one, also the same everything except the amendment. And so if they waived the speedy trial towards count one, first count one, then presumably that is, if this is not an amendment, if this is new and additional, that charge is still pending and this court would need to remand for trial on that as well because it's still pending. So if we have count one heroin pending and we go to trial and the evidence shows fentanyl, then we would be able to make that amendment to conform to the evidence. And counsel has conceded that as to the heroin charge as to that original one, the speedy trial was waived. Again, the reason I would suggest that the waiver applies to both is because you wouldn't say, oh, I wouldn't have fled if I knew it was fentanyl. Then I would have come and been here for this trial. It's a single case file, correct? Single case file. And now we have two count ones, one of them being dismissed. Any means any, right? I'm sorry. The statute, the speedy trial statute, the amended provision, any failure to do that. Absolutely. And he's had many. Counsel, in the circumstance of this case, I was just looking at the timeline. So it's your position that any means at any time. After the filing of the motion to dismiss, after the filing of the speedy trial demand, is there any restriction on that? There's no restriction on it. It has to be after the filing of the speedy trial demand under the statute. Because he was out of custody, it didn't have to be in writing. Again, if he waived that demand and this is somehow different, then where would the demand be for this one? So he had filed the speedy demand December 13th of 22, which is a year and a half after the complaint. Correct. 295 days passed between, by my count, and maybe that's not accurate, but it seems an extremely long period of time passed before he had a failure to appear. So does that not have any impact, given your argument that the statute any means any, even if a year, 10 years, 20 years passed and he wasn't given a speedy trial? Yes, absolutely. And that is based on Patterson. And that is based on the fact that defendant is not to use these things as a sword versus a shield. You know, defendant is making choices here not to show up, not to contact his counsel, to the point, again, where the motion to dismiss that was filed ended up having to be stricken and refiled several years later. Can I ask you a question?  Say, for instance, we say, oh, well, the new charge, that's not a new charge. That isn't the same or similar charge. Correct. So we grant the appeal with respect to that. Then you're arguing, well, the 160 days doesn't apply based upon Patterson. So then we say, okay, we agree with you based on your second argument, the speedy trial argument. What happens to the new charge? Well, the first thing I would say is if you're — I'm talking about on remand. No, I understand that. What I was going to say, though, is if you first find that it is not new and additional, it's the same charge and it stands, that ends the analysis. Right. I know. If you disagree, then we get to the speedy trial. So if we go back to speedy trial, there is no pending speedy trial demand on really either charge. Go ahead. I think either charge because the fact of the matter is they conceded. They waived it as to the original indictment that was filed. And as to the amended one, where is the speedy trial demand then? Well, but if you don't have the amended one because we say, oh, you couldn't have amended because it was new and, you know, particularly different charge, how does that work? So you're — just to clarify, you're asking if you find that it is new and additional and the speedy trial is running? The speedy trial hasn't. Hasn't run, then it's absolutely — we'd proceed to trial and we would proceed on the amended one because that's what the evidence is going to show. I get it. Okay. Any further? All right. You'll have time to rebuttal. Counsel may proceed when ready. Good morning, Your Honors. May it please the Court. Counsel, my name is Laura Peters. I'm here today on behalf of my client, the defendant appellee in this case, Mr. Dillon Sundell. And just to begin here today, I'd like to address the new and additional argument here because I think that's essentially the crux of this issue, right, of whether this fentanyl charge was new and additional. And the State points to PPOV stock or stake, you know, as evidence that this is not a new and additional charge. But that case is different. That case was — the defendant was initially charged with second-degree murder. The State later added a first-degree murder charge. And the Court found that because second-degree murder is a lesser mitigated offense of first-degree murder, the defendant knew exactly what he was going to have to defend against. It has the same elements he was going to have to defend against all the elements of first-degree murder. So this was not a surprise to him. That's different in this case where we have the State moving forward for two-plus years on an indictment that says that they're charging him with possessing heroin. And then less than two weeks before trial, changes that and says, actually, wait, we're going to go forward with fentanyl. That's different. There's different proofs required for heroin versus fentanyl here. Now, the State cited — I think it's Phipps. They relied on the Phipps case based on the same conduct as here. How do you distinguish that case? Off the top of my head, Your Honor, I'm drawing a blank in terms of the facts of Phipps. I would be happy to add supplemental brief that for you. But, again, in all the cases that the State has cited in its brief here, this is distinguishable. You know, people also talked about Peebleby Dryer, which is a sex offense case. Again, the court — this court said that the original indictment's references to the internet and defendant's gratification created an unavoidable inference that the defendant produced a visual medium, right? So in this case, we don't have that. This original indictment for heroin does not create an unavoidable inference that he's also going to be charged with fentanyl or that he could also be charged with fentanyl, right? It's a fundamentally different situation than what we have in Dryer or Staff. Again, there's different proofs required here. The defense had to defend against different things, different evidence for each charge, whether it be heroin or fentanyl. But wasn't it the same — I mean, wasn't it really the same conduct? So it was the same act, which is part of — in the compulsory joinder analysis. It has to be based on the same act, which we would agree it was here. The difference being that the defense was surprised to less than two weeks before trial when the State came out and said, wait a second, I know we've been telling you for two years we're going forward with heroin, and now we're not. But that's what the defendant thought. He thought he bought heroin. Correct, Your Honor. He bought what he thought was heroin, but it just turned out to be fentanyl. Correct, Your Honor. And I think that goes to the point that this is not a case of a scrivener's error, right? This is not like those cases where everything in the record, the State is alleging that the defendant possessed X. But then — The record shows the defendant was still contemplating a plea of guilty, right? Correct, Your Honor. Does that affect our analysis at all, that he thought that he was — that the correct charge was brought? That he — That the defendant thought it was heroin. I think it affects the analysis here, like I said, because it goes to this is not a scrivener's error. The defendant thought this is a legitimate heroin charge. The field test said that it was heroin. The arresting officer came in, you know, and testified in front of the grand jury saying this is heroin. How would the defense change if you had known it was instead of heroin, fentanyl? So I would first point to — we have on the record defense counsel saying this change has essentially rendered my whole theory of the defense, how I was going to go forward useless. I have to scrap that. I'm going to have to come up with a new defense. And I think that representation in and of itself should be enough to establish prejudice. She only has to have knowledge that he was possessing a controlled substance. The defendant doesn't have to have knowledge as to what the substance is, right? He has to know that it was a controlled substance. It doesn't really matter whether it's heroin or fentanyl.  So how could that affect the defense? So I hesitate to speculate because I was not trial counsel. I have not seen the full discovery record. But I think there are a number — Theoretically. Right. So I think there are a number of areas that, you know, her representation or her approach to this case could have changed. You know, the first is the defendant waived his right to a jury trial before this new charge had even been brought up. So he had waived a substantial constitutional right before he knew what the state was actually charging with. Maybe counsel would have advised her client differently on that. That change could have — the trial court would obviously allow him to withdraw his waiver if the facts changed. Maybe, Your Honor. But that's a — The case law is pretty clear that if there's a substantial change in the evidence, the trial court would be required to grant the motion to withdraw the waiver. Right. But that is a way that, you know, the defense counsel might have changed her representation. Another area would be in terms of the plea negotiations. Maybe defense counsel would have advised differently on that. Let's move on to the speedy trial issue because we haven't touched on that yet. People v. Patterson is what the defense relies upon regarding speedy trial. And in Patterson, we cited the statute, 103.5. And in that case, basically saying it doesn't matter if it was before or after the speedy trial period is run. The defendant can't — has waived their speedy trial demand. So in this case, wherein the defendant didn't absence himself from the court until after the speedy trial had run, how does — how do you distinguish Patterson? How do you get away from 103.5? So I think Patterson is distinguishable in a number of ways here. The first being, obviously, that case didn't implicate compulsory joinder. We don't have a later added charge here. So William — the Williams rule was not implicated in that case. It is here. So that's the first way it's distinguishable. Also, in Patterson, the defendant actively contributed to these delays, the delays in bringing the case to trial. He lied — Well, how did the defendant here not actively contribute? He absence himself one — by one way. The second way, he agreed to many continuances. Did he not? Correct, Judge. So he had a failure to appear. But that failure to appear did not come until after the 160 speedy day trial term had run. Does that matter, though, under Patterson or 103.5? Yes. Is it automatic upon the running of 160 days? Is it automatically subject to dismissal once 161 days have passed? Yes, Your Honor. At that point, the State, under the rules of speedy trial and compulsory joinder, in that 160 days term, that's when the State needed to bring this new and additional charge. By failing to do that, they've essentially missed that opportunity, right? They've already violated the speedy trial and the compulsory joinder rules by not bringing that in the 160 days. So — Is it incumbent upon the defense to make a motion? Well, and the defense did make a motion then, Your Honor. As soon as — when the trial — or when the State — excuse me — when the State moved then to add this new and additional charge, defense counsel said, I'd like some time here. I need to file a motion to dismiss on this basis. But even if the motion to dismiss had merit, his failure to appear, their argument is, is an automatic waiver under 103.5b. And Mr. Sundell would disagree with that, Your Honor, because to the extent that this Court feels that Patterson is applicable to this case, which, again, I think, if it is distinguishable, it does not apply in this case. But if it does, I think it was wrongly decided and that it would hold that — How dare you. I know. You're under — I apologize. But on the basis just that — if we say that, you know, speedy trial and compulsory joinder no longer applies, even if the State has missed that window just because the defendant absents himself from the court after that window has closed, we're essentially saying that the compulsory joinder — we're rendering it toothless at that point. We're not — this is a statutory right. We're not talking about a constitutional right. And the General Assembly said any. It's any failure to appear. What does any mean? So I would argue that any means any during that term. If the defendant takes some action that prohibits the State or inhibits the State from being able to bring these charges within that window, then, yes, that would constitute — you know, the defendant is contributing to that. But here, that's not what happened. The State had the full 160-day period. Mr. Sundell didn't absence himself from the court during that period. He didn't do anything to prevent the State from, you know, deciding to bring these fentanyl charges or anything like that. So — But what did the defense do at the end of the 160 days? The defense — the defense counsel's strategy seemed to be to just allow it to proceed to trial and stand on, you know, the fact that the State wouldn't be able to meet its burden at trial. How could he come — how could he come in now and say he wanted to stand on the fact that the speedy trial had already run, but we were going to go to trial anyway, then come in here and say, whoa, the speedy trial ran? So — I mean, didn't he drop the ball in not filing a motion to dismiss based upon speedy trial? I mean, defense counsel certainly could have filed that motion as soon as the speedy trial term had run. But I don't think that by waiting, that constitutes a waiver, no. So just laying in wait. I would disagree with that, Your Honor. The defense was not laying in wait. Again, I know the State has, in its briefs, talked a lot about gamesmanship here. But this — it's not gamesmanship for defense counsel to say, I don't believe that the State can meet its burden at trial and we're going to rest on that. Okay. That's a defense strategy. I get it. I get it. So the defense strategy is either it can dismiss it under speedy trial or we can go to trial and go on proof beyond a reasonable doubt. Correct, Your Honor. And by filing this new and additional fentanyl charge, the State, two weeks before trial, you know, essentially made defense counsel's strategy here untenable. So she would have to come up with an entirely new strategy for this new and additional charge, which, as we said, it could have been, you know, negotiating a plea differently, asking for a 402 conference. You know, fentanyl and heroin are different substances. Fentanyl can be legally prescribed. Heroin can't. Perhaps counsel would have explored some angle that way. You know, perhaps counsel would have, you know, reached out to an expert witness to try to get more information on the reliability of the testing for fentanyl. That's a lot of work as opposed to just filing a motion to dismiss based upon speedy trial, isn't it? I disagree that it's an either-or, Your Honor. The defense was in this position because the State chose to move forward on an indictment of heroin. Two years later. Well, so they initially indicted on heroin, even after having lab results that suggested it could have been fentanyl. They proceeded for two-plus years, apparently on heroin, making no indication that actually we're talking about fentanyl here. Let me ask you this question. This will be my last question. 103.5 says that you can waive before or after the speedy trial has run. You're asking us to find an exception in there. What exception can we apply to get around that? So I would say that essentially the whole point behind the speedy trial, and in conjunction with compulsory jointer, is to prevent the defendant from being trialed by ambush, right? From being surprised at the last minute with, here's some new charges that you didn't want to see. I think that's your first issue. I think what you're arguing right now is the first issue was the defendant put on notice of the charge. I'm not talking about that.  I'm talking about 103.5b that says, and Patterson reiterates, that allows you to waive, the defendant to waive his speedy trial running, either before or, to waive the speedy trial argument, either before or after the speedy trial has run. How do we, and what exception do we make in order to agree with what you're saying? You're saying the speedy trial didn't run. How do we, what is our exception under 103.5b? I would say the exception, again, in this case where Mr. Sundell did not contribute to the delay here, did not in any way prevent the State from bringing this fentanyl charge in that 160 days. There's nothing about that 160 days that, you know, Mr. Sundell absented himself from the court or did anything else to inhibit the State. You're right. You're right. But the statute, 103b, says it doesn't matter if it's within the 160 or after the 160. When he made a demand for speedy trial, if he absences himself from the court or he contributes to the delay in any way, he has waived that speedy trial. Where is the exception to that rule? Again, Your Honor, I think the exception is because this was a situation where the State is effectively trying to try him by ambush, to then say, you know, we're going to hold, we're going to allow the State to ignore this 160 days and then wait at the last minute right before trial, spring this on you and allow the State. Who ignored the 160 days? The State. Did the defense attorney not ignore the 160 days? It's not the defense attorney's burden to, within that 160 day, if I could just put my thought. It's not the defense attorney's burden to, within that 160 days, bring a charge or do anything. It's the State's burden to have brought that in the 160 days. And it's also not defense counsel's burden to have, you know, given the State a heads-up or somehow clued the State in, hey, you're not, maybe you're not prosecuting this well enough or efficiently enough. That's not what defense counsel's role here. It's on the State that they did not indict this in a way that they wanted. I think Justice Shostak's question or comments talk about the defendant's obligation, which is to show up, right? Yes, Your Honor. Well, and to file a motion to dismiss. It doesn't take effect automatically upon the expiration of 160 days after filing the demand. Right, Your Honor. And defense counsel did file a motion. I think the gentleman understood my question. And so the statute then, what the prosecution is arguing is the statute says tough. You miss one court date after filing the speedy demand. You have waived it. And there's case law that says you would have to refile a new one. Right. I believe the statute says that any, the language that Your Honors were putting is any absence from the court. Sure. And any does not say after this, it doesn't specifically say after this 160 days had run and there has been this violation that that can still be waived. The statute does not explicitly say that, Your Honor. So I don't think that Your Honors have to find that, that the statute does not compel that finding or that ruling. But with the Patterson case, it says exactly that. I have no further questions. Okay. All right. Thank you, counsel. Thank you, Your Honor. If I may proceed. Justice Kennedy, I would 100% agree with you that the defense obligation was to file a motion. And if you look in this case, they did file a motion to dismiss December of 2023. That ended up getting stricken and ended up not being heard until March of 2024 because defendant was gone again. So this is not a man who wanted a speedy trial. If there is a demand, I don't know where that demand would be. It has to be in writing. They conceded it was waived by the failure to appear. And there was no speedy trial demand as to this, if it's some new and additional theory. So where is the, this was a defendant that was out of custody. So he had to file a written demand. And he did have to enforce that as well. I would also like to talk just briefly about the Silva case. I always say Silva. And that was the subject of my motion. I wasn't sure if Your Honors wanted to discuss that at all. Before you get to that, I just want to ask about the passage of time here, which is pretty extensive for a Class IV possession case. For this to have dragged on a couple of years. You know, the defendant was asleep at the wheel when he was found. Was counsel ineffective by being asleep at the wheel for letting so much time go by without a motion? Well, obviously. We're going to see this again. Ineffectiveness is not released here, so it certainly would have to be brought under some other vehicle. But it's your position that a motion needed to be filed before, well, obviously a motion needs to be filed for this statutory speedy trial demand to be enforced. Absolutely. If this was new and additional. If it's not new and additional, then we don't even touch the speedy trial analysis. But I will point out in Dreyer, it was about two and a half years. It changed the statutory section of alleged. It was a different offense, although it was considered to be noticed. And it was considered to be not new and additional. How about Trout? Trout, they went from amphetamines to psilocybin, I think. And the court found that that was a change in nature and elements of the offense charged. Correct. And what I would say there. How's that going to be different from here? Well, what I would say there, first of all, they changed the amount. They changed it from less than 30 to less than 300. But also, one important point, if you look at Trout, is that all it said was that it needed to be re-verified. It didn't say you couldn't do it. So here, what we did to amend was to go back, ask that grand jury to correct it to amend it. And in an abundance of caution, obviously that would be given where we were at. I understand everybody understands preference would have been best practices would have been earlier. We understand all of that. But we also understand the reality of the situation of the assistant state's attorneys. There's high volume. This thing was not gearing up for trial because they were still discussing plea. Once it was set for trial, it was two weeks before we went back to the grand jury and asked them to amend it. We certainly could have waited until trial and asked to amend based on the evidence. I think what we did here was actually, given the circumstances, the better option, we asked the grand jury to look at it. Because one of the things you look at in, I think it was stuck, they talk about, well, I think it was stuck. What was the intent of the grand jury here? And we actually know the intent was to indict him on that particular pouch with that particular powdery substance that was in his car while he was asleep at the wheel after having snorted some of it. We know that was the intent. It was the same date, all of those things. In terms of your intent was just to correct what the substance was.  Yes, absolutely. And that's chemical makeup. That's not which object. We have the same object. We have the same conduct. We have the same criminal behavior. What we have is a different chemical makeup, which to be quite frank, whoever is dealing or selling or buying, very often they don't know the actual chemical makeup of it. And oftentimes it's a blend. And so if it was a blend, we would have charged both. But you only could get one conviction. It's one act. So that's what also tells you it's one act, is if we had charged a blend, it would have been one act. Thank you. It sounds to me like there's some policy considerations and procedures that should be in place in King County, if there's more cases like this. Well, 100 percent, and I'm sure they're aware of that. And nobody was, in some senses, thinking this was the best practice. It wasn't legally erroneous. It was not the best practice. And I will certainly, you know, actually, we will pass that along. But, you know, I don't think that when you understand the volume there, as I'm sure Your Honor does, sometimes right before trial you say to your assistants. But the statute doesn't say in the event that there is high volume, this doesn't apply. No. The case law doesn't say in the event there's high volume. Correct. Correct. So, you know what, I think we've all been prosecutors. We all know the volume, but we still need to follow.  And on the other hand, what you would advise your people you were supervising would be to, right before trial, while you're getting ready, you're interviewing your witnesses, you're doing all those things, check your charging document. Make any amendments you need to make. So, in that sense, given what we had, it is a little understandable of why that happened. I didn't know, Sylva, I would just ask you to follow the well-reasoned dissent there. I wasn't sure if you wanted us to address the motion or not. I realize counsel hadn't had a chance yet either. No, thank you, counsel. We'll consider it on the briefs. Okay. Thank you. We would ask this court to reverse. Thank you. All right. Thank you, counsel. We will take the matter under advisement, issue a ruling in due course.